I represent the appellant in this cross-appeal, James Sweeney. I would ask for the opportunity to reserve five minutes for rebuttal. Thank you, Your Honor. This case arises out of an automobile accident that occurred in 2004 in which Mr. Sweeney suffered severe and disabling injuries including multiple He was forced to close his business. He's now on social security disability. He applied for underinsured motorist coverage under his personal automobile insurance policy with Liberty Mutual. Liberty Mutual denied the benefits, and I'd like to discuss the facts very briefly because this is a fact-intensive case. Well, then I'll move on. Let me put a question to you. Sure. So the district judge, you would agree, didn't apply to the rest of the district, right? The language had changed. With respect to the one exclusion that she upheld. Using a non-owned motor vehicle for any kind of automobile accident. That's correct. So just starting there, the correct provision was not applied by the district judge. That's correct. So here you're asking us to look at the correct provision, both sides agree, and you're saying that this court then should, as a matter of law, determine really kind of the first instance in regards to the correct provision. That your plaintiff was not using, well, that he was not using a non-owned motor vehicle in any kind of auto business when he was injured. Well, I think the language is important. The language of the obsolete provision reads, we will not pay for bodily injury caused by anyone using a non-owned motor vehicle in any kind of auto business. The new language specifically says, we will not pay for bodily injury sustained while using a non-owned motor vehicle in any kind of auto business. The difference, Your Honor, and Judge Tucker specifically focused on it, she said in interpreting the old provision, she said we don't look at a trigger. The coverage is not triggered by what the use of the automobile is at the time of the accident. And that might have been... Can I ask you one more question? Sure. Did you reconsider the decision based on her using the wrong policy? Well, I asked the same question. We did not, Your Honor. Why not? I don't know. I was not trial counsel, so I don't know the answer to that. I don't know the answer to that. I was not trial counsel at the time. That's my only response. But the point is that I think you can, as Judge Oliver said, look at the provision as a matter of law because the law is so clear. Virtually every case that's been decided not only in this jurisdiction but throughout the country under a similar provision says that the focus is upon the use at the time of the accident, not upon the general reason why that car may have come into the possession of the individual at that time. PCRARA, which is a case we cited that the Superior Court found, this was a case where a dump truck was lent by the owner of the dump truck to someone engaged in hauling shale. During the course of that process of picking up and hauling the shale, the driver was injured, putting a claim under the policy of the owner of the dump truck. And in that case, the court said no. The auto body exclusion, auto repair shop exclusion does not apply in this case because at the time of the accident, the use of the car was not in connection with the auto body business. I want to ask you about this a little bit. I'll hold you right there at that point. You're saying this accident wasn't while you were out of business. I want you to go to the second exclusion. Well, there's three of them, Judge. I'm not sure which one you're referring to. The second exclusion, which is where the second exclusion was. What was the intent of the owner? Sure. I want you to tell me how you get out from under that. I think the record's very clear on that. Judge Tucker found that the record was clear, that Mr. Turner of Triple A knew and consented to the use by Mr. Sweeney of the vehicles that he infrequently borrowed for personal errands. When the question was put directly to Mr. Treadwell in no unambiguous terms at page 253 of the appendix, he was asked, did you know that Mr. Sweeney would use the vehicle for personal errands? And he said yes. And the question was, when did you learn about this early on, referring to early on in their five- to seven-year relationship where the customers were referred? It's unambiguous, and there's no hesitation. And I'll go one step further, Judge. What's the wording of that exclusion? Because this is part of the process. Excuse me? Exclusion. I'm sorry? Exclusion is held in the process. Yes, sir.  That's the wording of it. Thank you. while using a non-owned car. The owner must give permission to use it. It must be used in the way intended by the owner. If this was the first time, we might reach a different conclusion. But this relationship had been going on for some seven years. And under that scenario, where Mr. Treadwell, the owner of the rental company, said, I knew early on, it would be like my lending a boat to a friend of mine. No, sir. That was not our argument. Our argument is it is definitely an argument that's been made. But again, if you look at the record, and I point you again to 253A, there's no qualification. There's no qualification. There's no, well, did you know he was using it for personal errands? Yes, only when he was driving the car to test it out. There's no qualification in the record. It's clear, unambiguous, and emphatic. And he acknowledges, doesn't he, that he knew that he was going to use it to run errands for his new client? Yes. Yes, which is exactly what he was doing that night. So if you take that in conjunction with the language that we talked about before, that the injury was sustained not while using it in the auto business, but using it to go get taco shells for dinner, I don't think there's any question that there was. Well, the regular use exclusion, I think, is probably the weakest argument that they make. I mean, I don't know of any case where that's been applied other than in an employee-employer context, family-relationship context. In this instance, I mean, they rented cars, his customers rented cars from AAA maybe one to two times a month. And the record, I think you're aware of it, shows that the way the car got to the customer varied among a variety of different things. We don't know how many times Mr. Sweeney actually was the one who picked the car up, but it was minuscule. And under no circumstances is this comparable to a taxi cab driver or a park ranger or a policeman, all the cases that are cited by Liberty Mutual. It just doesn't make any sense. So the district court did not knock you out of the children's prison in 2001? Well, they knocked us out. I'm not sure about one, two, and three. I don't know which number is which. But they knocked us out on the fact that she found that the timing issue was irrelevant and that it didn't matter what the car was being used for at the time because under the old provision, you have the broad language, that he got it in connection with his auto body business, his auto business. Therefore, it's not. How much do you personally feel in front of the court? That's right. Thank you. Pennies, like pennies, you're right. Everything I know about these exclusions in 15 minutes. And I'm going to say that of course it was improper because when I've written somewhere, what they say is that if all you want is a judgment which upholds the result of the district court and you want no relief beyond that, the fact that you raise other issues, even if they're rural against you, should be raised without violating the appeal. Now I know it happens all the time, but I can tell you in this case, you want relief beyond what was given to you after the first time. That's the difference between you and that district. Your Honor, we sort of realized that that was the correct proposition, but we were afraid to do it. What you're saying is in judge, you would have done it too. Pretty much. It seemed like it was belt and suspenders. We realized that it was probably inappropriate, but we erred on the side of caution. So you want me to start with what you perceive as the weakest one first? I think that this is around the traits you'd be in favor of. I would concede on the order of strength that that's probably the most problematic. However, when you look at the cases, what they talk about is the basic concept here, just to back up a second, is that an insurance company in a contract like this is undertaking known risks that they are assessing and that they're charging premiums for. So what we're not going to do is we're not going to insure AAA's fleet of cars. We're not going to insure somebody else's fleet of cars. We will give you insurance for a non-owned car on occasional when you're using it for personal purposes, but we're not going to insure a bunch of cars that we haven't assessed the risk on. And in that respect, when you look at the principle, this case still fits in because essentially what we're being asked to do is insure that fleet of AAA cars. The cases say, first of all, it doesn't have to always be the same car to come under the regular use exclusion. I'm giving you the background. I agree that in and of itself was not the principle that I was trying to put before the court. Still, you have to look at the use and how regularly the use is made and how available the vehicles are. And the point is, if the insured has these cars regularly available to him and uses them, that's not a risk that we signed off for, and that's what the regular use exclusion has been applied to. Now, I will acknowledge that there aren't cases like this one that have been reported. There aren't cases – all the cases have upheld the regular use exclusion. The use in this case may be a little thinner than some of the other ones, but he can't point to a case that says we're wrong in this case. You're being asked to take the principles from those other cases and extend it here, and it's our position that it's appropriate because he had these cars available to him. They were not cars that we assessed as being part of the risk that we were undertaking, and it's beyond what was contemplated by the insurance contract. Regular doesn't mean frequent. It means regular. It means something that can happen periodically, and it has to be available to him. So that's our position with regard to the regular use exclusion. All right. So how do you think the strongest is? Well, the strongest is the auto business. And the point with the auto business exclusion is we will insure you when you're using cars other than your own, but we're not undertaking someone who's in the auto business who's regularly using other people's cars, and we're not going to insure them as well. So the focus here is was this vehicle being used incident to his auto business? I acknowledge it's problematic that Judge Tucker did not apply the proper exclusion, and I would submit to the court that it's your option. It's a legal question purely. The record's here. You're certainly capable of deciding this issue. The question becomes whether you want Judge Tucker's first shot at it or not, but the record's there for you to make the decision. The point being, and I think Judge Tucker addressed the salient points here, but for the auto business, he's not in this car. And the way that the plaintiff wants you to construe this provision, we're going to really start splitting hairs. If we're going to look at at the moment that the accident happened, was he actually doing company business? Let's say he's just driving the car to the customer, and on the way he stops and gets a soda. Well, is he on company business at that particular moment? The point here is he doesn't get this car unless it had a business purpose for him. This is like the example you gave, though. This is one where he's clearly gone to a supermarket. He's using the car. It's not as if he's on his way to deliver the car or something like that. No, but the reason the car is at his home is because he got the car from the rental agency the day before, and he's going to deliver it the next morning to his customer. It's all incident to his business. He didn't bring this car to his home to use it for personal urns. He brought it to his home so he would deliver it to his customer the next day. This is all incident to his business. But is this used? Will not pay for bodily injuries sustained while using a non-owned motor vehicle in any kind of auto business? Our construction of this is he was using it in his auto business because but for his auto business, he doesn't have possession of the car. I don't believe the construction that I'm asking the court to take is ambiguous. He has the vehicle. His use of the vehicle is in furtherance of his auto business. That's why he has it. If you're going to start parsing this to exactly what was being done at the moment that the accident occurred, I think that stretches this exclusion beyond the words of it and certainly beyond the purpose of it. And I think that that's what we're trying to do here. If he had rented this car for personal use, that would be different. If he had a relationship with this gentleman that he was getting the car to use for personal purposes, that would be different. But the reason he has this car is all about his business. That's why he has it. And that's why it can't be separated out. It becomes too arbitrary to separate it out. This also kind of goes in circles. What Treadwell, the man who rented the car to him, said was he allowed him to use the car for personal earnings because, and it's in the record, it would help him test the transmission. So in his mind, using the car for personal earnings furthers a business purpose. Well, if we look at the entire record, he's still furthering a business purpose. He's still using the vehicle. There was Treadwells. It was a benefit to Treadwell around the day of A.A. to have Sweeney drive that car for whatever business. It didn't benefit Sweeney's auto business to go out and drive the car to the store to get groceries. Not at that particular moment. If we want to take this down to the second. Isn't that where the wow comes in? I would say no. That's not where the wow. The wow is modifying the use in the auto business. Our construction of this. Well, candidly, the original policy language says you get coverage unless it's caused by someone in the auto business. Implying that the tortfeasor has to be the one in the auto business. The original exclusion does not. That's why it was changed. Because it was erroneous. The way the original exclusion is written, it only applies when the tortfeasor causes the accident. So this was a clarification in order to broaden the exclusion. That's why it was changed. And Judge Tucker goes off on the... She talks about the timing, which is, I would suggest to you, really part and parcel to both of those provisions. They both talk about using it in the auto business. One says while using it in the auto business. The other says using it in the auto business. I would suggest to you there's really no difference between while using it in the auto business and using it in the auto business. So to that extent, Judge Tucker was focused. She was aware of the temporal issue. And she said her analysis was, but for his business, he doesn't have this car. So she didn't make this temporal distinction that the plaintiff... She didn't even have the word while. She didn't have the word while. That's correct. And I'm submitting to you that while using and using don't really make much of a difference. What about the last exclusion? That takes us to the... Well, it first says with his permission and with his, in a way, intended by the owner. So our point is here, and this is where if he is not using it in the auto business, then he's using it in a manner not intended by the owner. If the one exclusion doesn't apply, then this one does. Because the exclusion, he said he could use my cars because he was testing out the transmissions, even for personal urns. But his testimony, and it's in the record, he said the use of the car for personal urns was not forbidden, but it was not intended. He goes on saying so much more than that. And when you get to the so much more, he wants to know how he became aware that he could run personal urns. He says, I asked him to. He says, when you say personal urns, you mean personal on behalf of yourself or personal on behalf... I guess I looked at it differently. You mean personal on behalf of you, or do you mean personal on behalf of him? Rather than use his personal car for running an errand, I prefer him to use mine to get the road experience and give me an opinion. Exactly. I am not asking you whether it was allowed in retrospect. I'm asking you whether or not before this accident you knew he was taking your vehicles and going to the supermarket with them. Yes. And that's my point, Your Honor. Either that testimony establishes that his taking the car out, even for personal urns, was a business use, or it establishes he was outside of the permitted use. It's one or the other. He wasn't intended... Right. ...to be taking me... Well, he says expressly in another place, it wasn't forbidden, but it wasn't intended that he would use personal urns. Now he's saying... How could that be so? Because he's saying that when he does use it for personal urns, it's okay as long as he's furthering my business purpose of testing the transmission. Does he really say both permitted and intended? Did you read the whole passage? I would suggest he's saying that it's... But it was not intended. He clearly says that. So I think if you look at his testimony in totality, what he's saying is it was okay if he used my car on personal urns because he was testing the transmission, but purely personal urns, which didn't benefit me, that was not what was intended. That's how I take the testimony as a whole. So with the admonition by Judge Greenberg that we're really not entitled to our cross-appeal, what we're asking for you to do is to affirm the trial court grant, the summary judgment in our favor. Thank you. I'll be brief. I refer the Court to the Shoemaker decision, which we cited in our brief and discussed at length. Judge Pollack wrote it, where he essentially says, you know, in a rental situation, you never have regular use because it's surrounded by so many contractual and practical impediments to availability of the car to someone, which is what is meant when we talk about regular use in the general context. With respect to the second – I keep getting the numbers wrong, but with respect to the personal versus auto business issue, this isn't a – it's nice to say splitting hairs. It's easy to say that, but every case turns on its facts, and there's nothing wrong with looking at the facts, and that's precisely what all of the other cases in this area have done. In fact, I did find one case, which I am reluctant to bring to the Court's attention, because it is an Idaho case. It's an appellate court in Idaho, Universal Underwriters, which is at 697 P. 2nd, 1263. And in that case, the Court says, here are the undisputed – the guy was going to a grocery store. Same thing. He worked for a car dealership. He had the car and went to a grocery store. Universal Underwriters, 697 P. 2nd, 1263. P. 2nd, 12 – yes, sir. It's the Idaho Court of Appeals. He was going to a grocery store, and the Court says, here are the undisputed material facts show at the time of the accident. The time the accident occurred, Morgan was on a purely personal mission with no incidental business connection other than the minimal benefit which might accrue to Stoddard Mead, the auto dealer he worked for, by having a Ford demonstrator on the public highway. He had been given a demonstrator to deliver the next day to a potential customer, and the Court was very clear. And every other case, you know, that's been decided in this area says the same thing. Again, Pecoraro, again I go back and repeat, Pecoraro is extremely clear on this point. And finally, with respect to intent and permission, Judge Oliver, I think you put your finger on it. I was just asking a question. Well, I know you did, but you quoted the right portion of the appendix, so I appreciate that. But I think the crux here is Mr. Treadwell's testimony is not qualified. He says, yes, I knew he was doing personal errands. And again, if this was the first time that happened, I would agree with my opponent and Liberty Mutual, but it had been going on for years and years. So he knew for years and years that he was using the cars on occasion to run personal errands, and I suggest that Liberty Mutual's arguments are nothing more than pure semantics. Yeah, I mean, you can't, if I, if you ask me to borrow my fishing boat to take a bunch of guys out fishing, and instead you decide to go over to Mexico and run some drugs into the country. And I find out shortly afterwards that that's what you were doing, but the next five years you continue to ask me to borrow the fishing boat to take the guys out fishing, and I continue to let you do it. I don't think you'd have any problem convicting me for a criminal conspiracy, Judge. That's intent. And this guy knew that he was using this car for personal errands for years and years, and continued to permit him to do that. So, again, semantics doesn't really play a game here. When Liberty Mutual says in its advertisements it's going to do the right thing, it's not doing the right thing here, Your Honors. Thank you.